STATE ex rel. RICHARDS, et al., Plaintiff, v. BURKHART, as Secretary of State, Defendant.

(5 cases.)

(183 N. W. 870.)

(File Nos. 4950, 4951, 4952, 4953, 4954.  Opinion filed July 16, 1921.)

1. **Statutes—Initiative and Referendum, Referendum Re Repealing Acts Re Primary Election Law—Enactments, Non-statements Re Taking Effect, Petitions for Referendum Filed June 28th, Legislative Adjournment March 4th, 90 Days Statute, Whether Applicable—Submitting to Vote "Before Going Into Effect," Effect.**

   Under the five legislative enactments in question; one Chap. 329, Laws 1921, repealing Secs. 7125-6, Code 1919, relative to paramount issues and joint debates; Chap. 330, repealing Secs.

7163-5 relating to official party indorsement of appointive officers; Chap. 331, relating to party platform; Chap. 332, repealing Secs. 7166-7175 relating to candidates for postmaster, and Chap. 333, repealing Secs. 7127-9 relating to publicity pamphlet, neither of said acts describing when it should take effect; and Const., Art. 3, Sec. 1, providing among other things that the people reserve the right to require that any laws enacted shall be submitted to vote of electors of the state before going into effect, except, etc.; and Art. 3, Sec. 22, providing that no act shall take effect until 90 days after adjournment of the session at which it passed, unless in case of emergency, etc., and Sec. 5069, Code 1919, providing (with certain exceptions) that a petition for referendum of legislative enactment shall be filed in office of secretary of state within 90 days after adjournment of Legislature passing the law; and Sec. 5111, Code 1919, providing that, subject to constitutional provision and statute relative to vetoes and referendum, a legislative act not prescribing when it shall take effect * * takes effect on first day of July after its passage, held, that the provision of Const., Art. 3, Sec. 1, relating to referendum are not self-executing, that relator's contention that the purpose of said provisions is to permit invoking of referendum any time prior to time when act becomes effective, and that July 1st is such date, and that therefore Sec. 5069, Code 1919, imposing the 90 day limit for filing such petitions. curtails and abridges constitutional rights and privileges under said constitutional provision, is untenable; that the words "shall be submitted to a vote * * * before going into effect" clearly relate to the word "submit," and not to the time within which referendum petitions may be filed. So held, where the Legislature which enacted said laws adjourned March 4th.

2.   Constitutional Law—Constitutional Provision, When Self executing, Declarations Re in Constitution, and By Courts—Provision Supplying Means of Enjoining, Protecting Right, or Enforcing Duty as Self-executing, and Eo Converso as Non-self-executing—Rule Re Referendum Provision.

While constitutional provisions relating to referendum are sometimes declared in the Constitution to be self-executing, while in other cases they are declared by courts to be self-executing although not so declared in the Constitution, and eo converso; a constitutional provisions is self-executing if it supplies a sufficient rule for enjoying and protecting a right, or by which the duty imposed may be enforced; and where it requires performance of an act but provides neither officers, the means or mode in which the act shall be performed, appropriate legislation is essential and such provision is non-self-

executing; the question always being whether the language of the constitutional provision is addressed to courts or the Legislature; does it indicate it was intended as a complete present enactment, this being determined from language used and of intrinsic nature of the provision, and if these and the liability thereby imposed is fixed by the provision itself, and there is no indication that the subject is referred to Legislature for action, the provision is self-executing. Constitutional provisions reserving to people power to enact or reject proposed laws at the polls are self-executing to the extent that they prescribe rules for exercise of the rights preserved, but where they merely create rights to be exercised in manner prescribed by general laws, they are inoperative until enactment of Legislation.

3.  Same—Non-specification in Constitution Re Time, Place of Filing Referendum Petition, Method of Signing, Date of Voting, Non-designation of Referendum Officer, Effect Re Referendum —Direction to Legislature to Enact Effective Legislation, Effect of Legislation Re Date of Filing Referendum Petition— Mandamus Applications Refused.

Inasmuch as Const., Art. 3, Sec. 1, fails to specify time within which or place where referendum petitions may be filed, nor as to form of petition or method of signing or when acts shall be voted on, nor time when referred act shall take effect if voted upon favorably, and fails to impose duty upon any officer to cause the act to be brought before the people, and whereas it expressly directs Legislature to make suitable provision for carrying the provision into effect; and, Legislature having enacted Chap. 93, Laws 1899 (of which Sec. 5069, Code 1919, is a part) for declared purpose of carrying said constitutional provision into effect, said provision, and Sec. 22, Art. 3, are held, non-self-executing; since without said legislation referendum clause in Constitution would be ineffectual; and held, it was competent for Legislature in said act to fix period of 90 days after adjournment of Legislature within which the referendum petition might be filed, if such period is reasonable and "suitable." State ex rel. Richards v. Whisman, 36 S. D. 260, wherein this Court stated obiter, that a proper referendum petition should have been filed "prior to the first day of July last," explained, as not involving the question here determined, and as not having misled parties or counsel herein; the question in said former decision having been whether an initiative law could be amended by Legislature. Held, further, that, the referendum petitions herein not having been submitted to secretary of state within the time prescribed by law, applications for writs of mandamus will be dismissed upon the merits.

Original application by the State of South Dakota on the relation of R. O. Richards, H. A. Perriton and P. J. Murphy,

against C. A. Burkhart, as Secretary of State of South Dakota,, for writs of mandamus compelling the Secretary of State to file five separate petitions for referendum of enactments embraced in Chaps. 329, 330, 331, 332 and 333, Session Laws of 1921; there being five cases. Writs refused, and proceedings dismissed upon the merits.

*Gardner & Churchill,* and *Martens & Goldsmith,* for Relators.

*Byron S. Payne,* Attorney General, and *Vernon R. Sickel,* Assistant Attorney General, for Defendant.

(1)    Under point one of the opinion, Defendant submitted that: Const., Art. 3, Sec. 1, prescribes neither the form nor manner of submitting a legislative act to vote of the people; therefore the legislature acted under mandate of that constitutional provision in enacting Secs. 5067 to 5074, inclusive, Code 1919; and the time within which a referndum petition may be filed is provided in Sec. 5069; and cited: State v. R. R. Co. (Minn.) 118 N. W. 897; State v. Howell, 138 Pac. 286.

(2)    To point two, Plaintiff cited: Cooley on Const. Lim., p. 121; Const. Art. 3, Sec. 1.

GATES, J.   The principal and decisive question before us is: When must a petition be filed which invokes the referendum upon an act of the Legislature?

The Legislature of this state at its 1921 regular session passed, and the Governor approved, five acts repealing certain portions of the so-called Richards Primary Election Law (chapter 234, Laws 1917; sections 7097-7200, Rev. Code 1919,) viz.: Chapter 329, repealing sections 7125 and 7126, relating to paramount issues and joint debates; chapter 330, repealing sections 7163-7165, relating to official party indorsement of appointive officers; chapter 331, repealing section 7099, relating to party platform; chapter 332, repealing sections 7166-7175, relating to candidates for postmaster; and chapter 333, repealing sections 7127-7129, relating to publicity pamphlet. Neither of said acts prescribed when it should take effect. The Legislature adjourned on March 4, 1921. Separate petitions, five in number, each containing more than 11,000 names, were presented to the Secretary of State on June 28, 1921, invoking the referendum upon the five respective acts above mentioned. The Secretary of State refused to accept and file them for the reason that, by the

provisions of section 5069, Rev. Code 1919, the period within which such petitions could be filed expired on June 2, 1921, that being the ninetieth day after the adjournment of the Legislature. It is the contention of relators that such period did not expire until July 1st. These mandamus proceedings are brought to compel the Secretary of State to file said referendum petitions as of June 28, 1921.

The following sections of the Constitution and of Rev. Code 1919, are pertinent to the question at issue.

Const. Art. 3, § 1: "The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions: Provided, that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum.

"This section shall not be construed so as to deprive the Legislature or any member thereof of the right to propose any measure. The veto power of the executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by the vote of the electors of the state shall be: 'Be it enacted by the people of South Dakota.' The Legislature shall make suitable provisions for carrying into effect the provisions of this section."

Const. Art. 3, § 22: "No act shall take effect until ninety days after the adjournment of the session at which it passed, unless in case of emergency, to be expressed in the preamble or body of the act, the Legislature shall by a vote of two-thirds of all the members elected of each house, otherwise direct."

Rev. Code 1919, § 5069: "Any law which the Legislature may have enacted, except one which may be necessary for the immediate preservation of the public peace, health or safety, or

support of the state government and its existing public institutions, shall, upon the filing of a petition as hereinafter provided, be submitted to a vote of the electors of the state at the next general election. Such petition shall be signed by not less than five per cent. of the qualified electors of the state, and each elector shall add to his signature his place of residence, business, post-office address, and date of signing, which petition shall be filed in the office of the Secretary of State within ninety days after the adjournment of the Legislature which passed such law, and if a majority of all the votes cast both for and against the law be for the law, it shall become a law of the state, in force and effect on and after the day upon which the canvass of the vote thereon has been completed by the state canvassing board."

Rev. Code 1919, § 5111: "Subject to the provisions of the Constitution and statutes relating to vetoes and the referendum, an act of the Legislature which does not prescribe when it shall take effect, if passed at a regular session, takes effect on the first day of July after its passage and if passed at a special session on the ninety-first day after the final adjournment of such session."

[1] It is the contention of relators that the provisions of Const. Art. 3, § 1, relating to the referendum are self-executing; that their clear purpose is to permit the invoking of the referendum at any time prior to the time the act should become effective; that July 1st is such date, and therefore that section 5069, Rev. Code 1919, which imposes the 90-day limit upon the filing of referendum petitions, curtails and abridges the constitutional rights and privileges given under said section of the Constitution. They emphasize this portion of the Constitution, viz.:

"The people expressly reserve to themselves the right * * * to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect."

The inference is that the clause "before going into effect" refers to the time within which referendum petitions may be filed. That clause cannot by the wildest stretch of the imagination be held to so relate. It clearly and unmistakably relates to the word "submitted."

[2]   In some cases constitutional provisions relating to the referendum are declared in the Constitution to be self-executing. State ex rel. Kiehl v. Howell, 77 Wash, 651, 138 Pac. 286; Shryock v. Zanesville, 92 Ohio St. 375, 110 N. E. 937.

In other cases such provisions are declared by the courts to be self-executing, although not so declared in the Constitution. Arkansas Tax Com. v. Moore, 103 Ark. 48, 145 S. W. 199; Thompson v. Vaughan, 192 Mich. 512, 159 N. W. 65; Stevens v. Benson, 50 Or. 269, 91 Pac. 577.

In other cases such provisions are declared by the courts not to be self-executing. Long v. City of Portland, 53 Or. 92, 98 Pac. 149, 1111; State ex rel. Bradford v. Portland Ry., Lt. & Power Co., 56 Or. 32, 107 Pac. 958; State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281; Pawhuska v. Pawhuska Oil, etc.. Co., 28 Okl. 563, 115 Pac. 353; Schubel v. Olcott, 60 Or. 503, 120 Pac. 375.

In one case the court was compelled to hold that a referendum provision was not self-executing even though the Constitution declared it to be.   State v. Brodigan, 37 Nev. 37, 138 Pac. 914.

Cooley lays down this rule:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced."   Cooley, Const. Lim. p. 121.

In Washingtonian Home v. Chicago, 157 Ill. 414, 427, 41 N. E. 893, 896 (29 L. R. A. 798,) the court said:

"Where the Constitution requires the performance of an act, but provides neither officers, the means, or the mode in which the act shall be performed, in such a case there is no other means of carrying such a provision into effect but by appropriate legislation. In such cases the Constitution does not execute such provisions."

In Taylor v. Hutchinson, 145 Ala. 202, 207, 40 South. 108, 109, the court said:

"Our Constitution contains many instances of nonself-executing provisions. In these cases there is always some indication that something is left for the Legislature to do, or there is something

in the nature of the provision that renders such legislation necessary."

In Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626, the court said:

"The question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature—does it indicate that it was intended as a present enactment, complete in itself as definite legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing."

In 12 Corp. Jur. 735, the text says:

"Constitutional provisions reserving to the people the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, independently of the Legislature, are self-executing to the extent that they prescribe the rules for the exercise of the rights reserved; but where such provisions merely create rights to be exercised in the manner prescribed by general laws, they do not become operative until the enactment of legislation."

See, also, the discussion of self-executing constitutional provisions by Judge Corson in State v. Bradford, 12 S. D. 207, 80 N. W. 143.

[3] Not only does our Constitution not specify the time within which referendum petitions may be filed, but it does not specify where they shall be filed, nor anything as to the form of the petition nor as to the method of signing, nor when the act shall be voted upon by the people, nor the time when a referred act shall take effect if voted upon favorably by the people. Furthermore, no duty is imposed upon any officer to cause the act to be brought before the people. Not only are these matters unsupplied in the Constitution, but article 3, § 1, expressly directs the Legislature to make suitable provisions for carrying the con-

stitutional provisions into effect. The only restrictions upon the. Legislature are that the legislation must be suitable, and that it may not require more than 5 per cent. of the electors to refer to the people an act of the Legislature. Pursuant to such mandate, the Legislature at its first session after the adoption of the constitutional amendment passed chapter 93, Laws 1899, for the declared purpose of carrying the constitutional provisions into effect, of which act the present section 5069 was then a part.

Manifestly, therefore, our constitutional provisions with reference to the referendum are not self-executing. Without legislation to designate where and with whom the petition is to be filed, when the referred act is to be voted upon, who is to be responsible for placing it upon the ballot, the manner in which the question is to be placed upon the ballot, and the time when the act is to become a law if it receives a favorable vote, the referendum clause in the Constitution would be wholly ineffectual. It was therefore competent for the Legislature to fix the period of 90 days after the adjournment of the Legislature as the period within which a referendum petition might be filed if such period is a reasonable time therefor, or, in the language of the Constitution, if such period is "suitable." Such period has not been challenged as unreasonable or unsuitable in and of itself. Indeed, upon the oral argument counsel for relators conceded that, if nonemergency acts went into effect at the expiration of 90 days after adjournment, then referendum petitions must be filed within such period. We therefore hold that such 90-day period is a reasonable and "suitable" regulation for the purpose of carrying the constitutional provision into effect.

In their brief counsel for relators further say:

"These same petitioners were before this court in the case of State ex rel. Richards v. Whisman, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1, and at that time this court stated to them that 'in order to have kept alive the question of the validity of the emergency law contained in chapter 258, as a question for determination in this court, or the court below, a proper referendum petition should have been filed prior to the 1st day of July last. * * *' In that case these same petitioners were testing the question of whether or not the Legislature could repeal an act initiated by the people, and, while this court held that the Legislature had

such authority, it expressly stated that the relators' remedy in that case was to have filed a referendum petition prior to the 1st day of July. These relators are now not only complying with the constitutional provision, but also with the instructions of this court in that case; they are not only within the spirit of the Constitution, but within the very letter of the construction placed upon it by this court."

It is true that the quoted sentence appears in the opinion in the Whisman Case. It is also true that in that case we said, on page 266, of 36 S. D., on page 708 of 154 N. W. (L. R. A. 1917B, 1:)

"Every law which the Legislature has power to enact, where there is no emergency clause embodied therein, goes into effect on the next succeeding 1st day of July, unless vetoed by the Governor, or unless a referendum petition referring the same to a vote is filed as required by law."

And again on page 274 of 36 S. D., on page 712 of 154 N. W. (L. R. A. 1917B, 1,) we said:

"Not that the act itself would be void, but the emergency clause would be void, with the result that the act would not go into effect until the 1st day of the next July, and also with the result that, in the event of a proper referendum petition being filed as required by law, such enactment would not go into effect until approved by a majority vote of the electors of the state."

It is also true that the question in that case was whether an initiated law could be amended by the Legislature; indeed in that opinion on page 267 of 36 S. D., on page 709 of 154 N. W. (L. R. A. 1917B, 1,) we said:

"As we view the record in this case, there is but one question before this court for determination, and that is: Had the Legislature power to repeal chapter 201 of 1911, and enact in place thereof the general primary law embodied in chapter 258, Laws of 1915?"

No petition for the referendum of that act of the Legislature had been filed. It was incidentally pointed out in that opinion that, in order to be in position to challenge the act successfully, the relators should have caused a referendum petition to be filed even though the emergency clause was attached to the act. There was no question then before the court as to when a referendum

petition should be filed.  No reference was made to the section of statute which is now section 5069, Rev. Code 1919.  It was not intended thereby to set aside a lawful legislative act.  Clearly the reference to July 1st was inadvertent and should not have been misleading to any person, lawyer or layman, least of all to these petitioners.  But neither in their applications for mandamus nor in the brief do relators contend that they were deceived or misled by the sentence quoted in relators' brief from the Whisman Case.  Nor do relators contend that they believed that this court was intentionally passing upon the constitutionality of the 90-day provision now contained in section 5069, Rev. Code 1919.  Unless they so believed, they cannot consistently claim that they relied upon the reference to July 1st above quoted.

In another part of the opinion in the Whisman Case we said, on page 269 of 36 S. D., on page 711 of 154 N. W. (L. R. A. 1917B, 1:)

"And, recognizing the right of the Legislature to enact laws as it pleased, within all its constitutional powers, the referendum was designed as a check upon all legislative enactments not favored by the people."

With equal force relators might contend that by using the words "all legislative enactments" we intended to eliminate from article 3, § 1, of the Constitution the words "except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions."  That contention would be just as reasonable as the one now urged.

For the reason that the referendum petitions were not presented to the Secretary of State within the time prescribed by law, the applications for writs of mandamus in these cases will be dismissed upon their merits.